# ARKANSAS PROFESSIONAL BAIL BONDSMAN LICENSING BOARD *v.* Marc OUDIN, Jr., and Bail Bond Financing, Inc.

01-782                                    69 S.W.3d 855

Supreme Court of Arkansas
Opinion delivered March 21, 2002

[Petition for rehearing denied April 25, 2002]

*Mark Pryor*, Att'y Gen., by: *Kim Evans*, Ass't Att'y Gen., for appellant.

*David A. Hodges*, for appellees.

ANNABELLE CLINTON IMBER, Justice. Appellant Arkansas Professional Bail Bondsman Licensing Board challenges the Pulaski County Circuit Court's reversal of its decision to sanction Appellees Marc Oudin, Jr., and Bail Bond Financing, Inc., for the dual ownership of a bail bond company and a fine-collection company that serve a common court. The Board concluded that Mr. Oudin's dual ownership of the companies violated Section 17 B of Rule and Regulation 1 of the Arkansas Professional Bail Bondsman Licensing Board. We hold that substantial evidence supports the Board's decision. Accordingly, we reverse the circuit court's order and remand with directions to reinstate the Board's decision.

Mr. Oudin is the owner and sole shareholder of a bail bond company, Bail Bond Financing, Inc., and the owner and sole shareholder of Court Services, Inc., a company that assists various courts in collecting outstanding fines and warrant forfeitures in return for fees and service charges. The Board held a disciplinary hearing on April 9, 1999, to determine whether Mr. Oudin's conduct violated the Bail Bondsman Licensing Law at Ark. Code Ann. §§ 17-19-101 to 17-19-212 (Repl. 2001) or the rules and regulations governing the bail bond profession. The Board found that Bail Bond Financing provides bond services to the Pine Bluff Municipal Court and that Court Services has contracted to provide its fine-collection services to the Pine Bluff Municipal Court. The Board concluded that Mr. Oudin's dual ownership of the companies was in violation of Section 17 B of Rule and Regulation 1 of the Arkansas Professional Bail Bondsman Licensing Board. That regulation prohibits an owner, partner, officer, or stockholder of a bail bond company from being "regularly or frequently employed by" a court of law. The Board sanctioned Appellees by suspending Marc Oudin, Jr.,'s professional bail bondsman license for six months and by fining Bail Bond Financing, Inc., in the amount of $5,000.

Following the Board's decision, Appellees appealed to the Pulaski County Circuit Court pursuant to the Arkansas Administrative Procedure Act at Ark. Code Ann. § 25-15-201 to 25-15-214 (Repl. 1996 and Supp. 2001). The circuit court found that the Board was within its authority to take action, that the correct standard of review was substantial evidence, and that substantial evidence existed to support the Board's finding of a contract between Court Services and the Pine Bluff Municipal Court. The court concluded that, due to apparently contradictory Attorney General's opinions on the subject, the petitioners had not met their burden of showing there was no substantial evidence to support the Board's finding that Court Services was "regularly or frequently employed by" Pine Bluff Municipal Court. The circuit court ultimately decided, however, that because Court Services is an independent contractor, rather than an employee, of the Pine Bluff Municipal Court, Appellees were not in violation of Rule and Regulation 1, Section 17 B. As a result, the court reversed

the Board's decision imposing sanctions. For its one point on appeal, the Board contends that its decision finding Appellees in violation of Section 17 B of Rule and Regulation 1 was based upon substantial evidence and was not arbitrary and capricious.

## I.  Standard of Review

This court's review is limited in scope and is directed not to the decision of the circuit court but to the decision of the administrative agency. *Arkansas Cont. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001); *Tomerlin v. Nickolich*, 342 Ark. 325, 27 S.W.3d 746 (2000). "It is not the role of the circuit courts or the appellate courts to conduct a *de novo* review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision." *Tomerlin v. Nickolich*, 342 Ark. at 331, 27 S.W.3d at 749; *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). *See also Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). We review the entire record in making that determination. *Arkansas Bd. of Exam'rs v. Carlson, supra*; *Arkansas Alcoholic Beverage Control v. Muncrief*, 308 Ark. 373, 825 S.W.2d 816 (1992).

This court has previously noted:

> [A]dministrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. Because decisions regarding the licensing of bond companies and their employees turn on executive wisdom, it is appropriate to limit the scope of the review on appeal.

*Tomerlin v. Nickolich*, 342 Ark. at 332-33, 27 S.W.3d at 750 (citations omitted). Thus, our review of administrative decisions is limited in scope. Administrative decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499

(1999); *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992). These standards are consistent with the provisions of the Administrative Procedure Act at Ark. Code Ann. §§ 25-15-201 to 25-15-214:

> [R]eview is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h).

*Arkansas Cont. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. at 326, 64 S.W.3d at 244-45; *Arkansas State Racing Comm'n. v. Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001); *Arkansas Bd. of Exam'rs v. Carlson, supra.*

Arkansas Code Annotated § 25-15-212(h) provides that this court may reverse or modify the Board's decision

> if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Supp. 2001). In making this determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Arkansas Health Servs. Agency v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998). "[B]etween two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced." *Arkansas Contr. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. at 327, 64 S.W.3d at 245; *Jackson v. Arkansas Racing Comm'n*, 343 Ark. 307, 34 S.W.3d 740 (2001).

■ ■ Substantial evidence is defined as "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture." *Tomerlin v. Nickolich*, 342 Ark. at 333, 27 S.W.3d at 751 (quoting *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 362, 994 S.W.2d 456, 461 (1999)). The challenging party has the burden of proving an absence of substantial evidence. *Id.* To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* "The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made." *Id.*

■ As for our rule regarding the determination of whether an administrative action is arbitrary and capricious, this court said in *Arkansas Cont. Lic. Bd. v. Pegasus Renovation Co.*:

> Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. To have an administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. We have stated that the requirement that administrative action not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. . . . [O]nce substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary.

347 Ark. at 332, 64 S.W.3d at 248 (citations omitted).

## II. The Board's Authority

The Board maintains that it acted within its authority in conducting a hearing and imposing sanctions against Appellees for a violation of Section 17 B of Rule and Regulation 1 of the Arkansas Professional Bail Bondsman Licensing Board.[1] Rule and Regulation 1, Section 17, states:

[1] Pursuant to Ark. Code Ann. § 17-19-106(b)(5) (Repl. 2001), the Board is authorized to adopt and enforce rules and regulations "to enable it to effectively and

> A bail bond company license shall not be issued or renewed if any owner, partner, stockholder or officer:
>
> . . . .
>
> B. Is regularly or frequently employed by:
>
> (1) A court of law; . . .

The Board argues that, though the licenses of Appellees were not up for issuance or renewal at the time of the hearing, Ark. Code Ann. § 17-19-210(a)(1) authorizes the Board to take action against a license if it is determined, after notice and a hearing, that the licensee has "[v]iolated any provision of, or any obligation imposed by, [ ] any lawful rule, regulation, or order of the board . . . ." The Board also relies on language from *Bob Cole Bail Bonds, Inc. v. Howard*, 307 Ark. 242, 819 S.W.2d 684 (1991), indicating that "the bondsman retains his license with an annual renewal application, barring any violations of the provisions of Act 417 [of 1989][2] or the rules and regulations of the commissioner."

Appellees, on the other hand, contend that the Board went beyond the scope of its authority in sanctioning them because, according to the prefatory language of the regulation, the provision only applies when a license is being "issued or renewed." Appellees' licenses did not expire until December 31, 1999. The hearing was held by the Board on April 9, 1999, and its decision was issued on April 13, 1999. Therefore, Appellees argue that the provisions of Rule and Regulation 1, Section 17, were inapplicable to them because their licenses were not up for renewal at the time. Based upon this argument, they contend that Section 17 B is an insufficient basis upon which the Board could take action under section 17-19-210(a)(1).

Appellees further assert that we should follow our decision in *Arkansas Contr. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001), by holding that the clear language of the statute in question indicates that it should be utilized by the Board to decide only when to issue an original license or renew a license

---

efficiently carry out its official duty of licensing and regulating professional bail bond companies and professional bail bondsmen."

[2] Act 417 of 1989 was the original act governing the practice of bail bondsmen.

and not to determine whether misconduct has occurred. Reliance upon *Pegasus*, however, is fundamentally misplaced. In *Pegasus*, this court was interpreting two statutes pertaining to the Contractor's Licensing Board. The list of acts deemed to be grounds for revocation of a license was contained in a specific statute, Ark. Code Ann. § 17-25-308, and was different from the factors listed in a separate statute, Ark. Code Ann. § 17-25-305, indicating the qualifications required for issuance or renewal of a contractor's license. We concluded, interpreting those specific statutes, that the plain language of section 17-25-305 made it clear that the trial court erred in using the elements specifically applicable to issuance or renewal to determine whether "misconduct" had occurred under the separate provision of section 17-25-308. The two statutes interpreted in that case present a different scenario than does the regulation now before us.

█ The Board advances the policy argument that allowing Appellees to violate or transgress Section 17 B between renewal periods would completely undercut the legislative intent for having regulations in the first place. We agree. Section (a)(8) of Ark. Code Ann. § 17-19-210 clearly indicates the legislature's intent that the licenses of professional bail bondsmen and bond companies may be suspended when the bondsman or company has failed to comply with the Board's rules and regulations. By authority of that statute, the Board may

> suspend for up to twelve (12) months or revoke or refuse to continue any license issued pursuant to the provisions of this chapter if, after notice and hearing, the board determines that the licensee or any member of a company which is so licensed has:
>
> . . . .
>
> (8) Failed to comply with . . . rule, regulation, or order of the board for which issuance of the license could have been refused had it then existed and been known to the board.

Ark. Code Ann. § 17-19-210(a)(8) (Repl. 2001). In addition, Arkansas Code Annotated § 17-19-211 (Repl. 2001) provides for an alternative sanction of an administrative penalty not to exceed $5000 against a licensee where grounds exist for the suspension or revocation of the license. Accordingly, we conclude that the Board did not act outside its authority when it conducted a hear-

ing and imposed sanctions upon Appellees for a violation of Section 17 B of Rule and Regulation 1.

### III. Regular or Frequent Employment by a Court of Law

#### A. Parties to the Contract

The Board concluded that a violation of Section 17 B of Rule and Regulation 1 occurred based on its finding that "[Mr. Oudin] is the owner of a bail bond company and a company [Court Services] which is regularly or frequently employed by a court of law." Though the introductory paragraph of Court Services' contract for services states that the agreement is between Court Services and the City of Pine Bluff, the Board points to substantial evidence that the contract is between Court Services and the Pine Bluff Municipal Court. The evidence in favor of the Board's decision consists of the following: (1) the third recital of the contract states, "[w]hereas, A.C.A. section 16-17-217(a) (Repl. 1994) authorizes the Municipal Court, upon approval of the governing body of a municipality, to execute a contract with a person for the collection and enforcement of fines and costs;" (2) Paragraph No. 1 of the contract states, "Court Services is hereby retained by the Municipal Court to monitor and collect installment payments of fines and court costs;" (3) Paragraph No. 2 of the contract lists certain services that Court Services will provide "in cooperation with the Municipal Court;" and (4) the contract is signed by Mr. Oudin and both the Mayor of Pine Bluff and the Pine Bluff Municipal Judge.

In spite of the above-referenced language in the contract, Appellees maintain that the contract at issue was solely between Court Services and the City of Pine Bluff and that Court Services performs a service for the municipal court that is not prohibited by applicable statutes, rules, or regulations. In support of this argument, Appellees point out that the Pine Bluff City Council passed an ordinance on December 21, 1998, waiving competitive bidding and authorizing the mayor, municipal judge, and city clerk to execute the contract with Court Services for the collection of outstanding fines. They also emphasize Mr. Oudin's testimony that Court Services provides a service for the court but

actually contracts with the city and county governments and his testimony that employees of Court Services have no contact with the municipal judge.

■ Once again, our standard of review requires us to review the agency's decision, giving the evidence its strongest probative force in favor of the agency's decision, and to determine whether the Board's decision is supported by substantial evidence. Pursuant to this standard of review, viewing the evidence in the Board's favor, we conclude that there is substantial evidence to support the Board's decision that the contract is between Court Services and the Pine Bluff Municipal Court.

### B. Independent Contractor Status

We turn next to the Board's argument that the status of Court Services as an independent contractor is irrelevant to the Board's interpretation of Rule and Regulation 1, Section 17 B. There is no dispute that, according to the contract at issue, "Court Services acts as an independent contractor and is not an agent, employee or servant of the City." The Pulaski County Circuit Court, in its order entered on March 26, 2001, reversed the Board and concluded that Rule and Regulation 1, Section 17 B, does not apply to independent contractors. We disagree and hold that the Board's interpretation of the regulation is not clearly wrong.

■ The Board admittedly relied upon Attorney General's Opinion No. 98-194 as to the relevance of Court Services' status as an independent contractor. We need not address the effect of that opinion, however, other than to note that Attorney General's opinions are not binding precedent. *See, e.g., City of Fayetteville*, 304 Ark. 179, 801 S.W.2d 275 (1990); *Klinger v. City of Fayetteville*, 293 Ark. 128, 732 S.W.2d 859 (1987).[3]

---

[3] Likewise, we need not consider the Board's assertion that Attorney General's Opinion No. 98-194 provided substantial evidence for its decision; nor must we consider Appellees' assertion that the opinion does not constitute substantial evidence. As Attorney General's opinions are not binding authority, such opinions cannot constitute substantial evidence nor show a lack thereof.

The first rule in considering statutory meaning is to construe the statute exactly as it reads, giving the words their ordinary and usually accepted meaning. *See, e.g., Bob Cole Bail Bonds, Inc. v. Howard*, 307 Ark. 242, 819 S.W.2d 275 (1991). An administrative agency's interpretation of its own regulation will not be overturned unless it is clearly wrong. *Arkansas Dep't of Human Servs. v. Hillsboro Manor Nursing Home, Inc.*, 304 Ark. 476, 803 S.W.2d 891 (1991). It is also important to note that, in considering the administrative intent behind a regulation, this court should not engage in interpretations that defy common sense and produce absurd results. *See, e.g., Green v. Mills*, 339 Ark. 200, 4 S.W.3d 493 (1999). Appellees assert that the phrase "regularly or frequently employed" does not ordinarily refer to independent contractors because the term "frequently employed" could apply to temporary workers and does not necessarily apply to independent contractors. They further claim, without citation to authority, that because independent contractors are not specifically mentioned within the regulation's prohibition they are necessarily excluded.

These arguments assume that independent contractors are not "employed" by those for whom they work. Though Appellees are correct in asserting that there is a clear distinction between employees and independent contractors, it does not follow that independent contractors are not "employed." The specific arguments made by Appellees elucidate the flaw in their logic. Appellees point out several indicia of an independent-contractor relationship. For example, they assert that "[c]haracteristic of an independent contractor relationship is that the *employer* does not possess the power of controlling the person as to the details of the stipulated work." (Emphasis added). *See Jackson v. Petit Jean Elec. Co-op*, 268 Ark. 1076, 599 S.W.2d 402 (1980). Appellees also point out that circumstances to consider in determining whether a workman is an independent contractor include the time for which a workman is *employed* and the right to terminate *employment* without liability. *See Arkansas Transit Homes v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000); *Parker Stave Co. v. Hines*, 209 Ark. 438, 190 S.W.2d 620 (1945). These specific arguments indicate that independent contractors, though

clearly not employees within the legal definition, are still considered to be "employed" by those for whom they work. A holding by this court that the regulations preventing bail bondsmen and bail bond companies from engaging in employment with courts of law do not apply where the bondsmen or bond companies are independent contractors, rather than employees, of such courts would produce absurd results. Likewise, exempting independent contractors would defeat the purpose of the regulation, which is to prevent objectionable conflicts of interest. *See* Ark. Code Ann. § 17-19-105 (Repl. 2001) (prohibiting bondsmen or bond companies from giving or promising anything of value to a person who has power to hold in custody).

Appellees further their argument that Section 17 B of Rule and Regulation 1 does not apply to them by underscoring the fact that, in addition to being an independent contractor, Court Services, Inc., is a corporation. They maintain that Court Services and the bail bond company are separate corporate entities and the Board improperly pierced the corporate veil in order to find liability. This argument is without merit. The Board's order simply states:

> 1. That Marc Oudin is a bail bondsman licensed by this Board. He owns and is President of Bailbond Financing, Inc., which is also licensed by this Board.
>
> 2. That Marc Oudin is the President and owner of Court Services, Inc., a corporation which has contracted with various cities to collect fees assessed by their Municipal Courts.
>
> . . . .
>
> Respondent, Marc Oudin violated Section 17 of Rule and Regulation 1 in that he is the owner of a bail bond company and a company which is regularly or frequently employed by a court of law.

As demonstrated by its order, the inquiry before the Board under Section 17 B of Rule and Regulation 1 was whether any owner, partner, stockholder, or officer of a bail bond company was regularly or frequently employed by a court of law. Clearly, Marc Oudin, Jr., is the owner, sole shareholder, and contact person for a bail bond company, Bail Bond Financing, Inc.

Marc Oudin, Jr., is also the owner, sole shareholder, and contact person for Court Services, which is regularly employed by the Pine Bluff Municipal Court. Pursuant to our standard of review, we cannot say that the Board's interpretation of Rule and Regulation 1, Section 17 B, is clearly wrong.

Reversed and remanded with directions to reinstate the Board's decision.

CORBIN, J., not participating.