Ms. Linda Longstreth, Executive Director Arkansas Professional Bail Bondsman Licensing Board 101 E. Capitol, Suite 117 Little Rock, AR 72201
Dear Ms. Longstreth:
You have presented the following questions for my opinion:
 (1) Does an ownership interest in a business engaging in the personal restraint business (interlock devices) create a conflict for a licensed bail bond company owner or for a licensed bail bondsman?
 (2) Does an ownership interest in a business engaging in the rental of electronic monitoring equipment (electronic ankle bracelets) create a conflict for a licensed bail bond company owner or for a licensed bail bondsman?
You have provided the following information concerning the personal restraint business:
 Based on information obtained from the North Little Rock Traffic Court and the Driver Control Agency in Little Rock, the interlock device is ordered by the Judge and a copy of the Order forwarded to Driver Control. A list of phone numbers for companies authorized to install the interlock device is given to the defendant and the defendant is responsible for the installation. Once the interlock company installs the device, the company notifies Driver Control of the defendant's compliance.
You have provided the following information concerning the electronic monitoring equipment business:
 According to information gleaned from various sources, the Judge issues an order for an electronic monitoring device to be placed on the defendant and provides the defendant and his family with the name of the company to which the defendant is being assigned. The monitoring company is contacted by the defendant or his family and goes to the location where the defendant is being held (or to the defendant's residence, if the defendant is not incarcerated when the order is issued) to attach the device.
With this background information in mind, I will proceed to respond to your questions, which I will address in one answer.
RESPONSE
Question 1 — Does an ownership interest in a business engaging in thepersonal restraint business (interlock devices) create a conflict for alicensed bail bond company owner or for a licensed bail bondsman?
Question 2 — Does an ownership interest in a business engaging in therental of electronic monitoring equipment (electronic ankle bracelets)create a conflict for a licensed bail bond company owner or for alicensed bail bondsman?
It is my opinion that the answer to your questions will depend upon the extent of the ownership interest in the interlock device company or the electronic monitoring equipment company. If a licensed bail bondsman or the owner of a licensed bail bond company has an ownership interest in a business that has been authorized by the court to provide interlock devices or electronic monitoring equipment pursuant to the court's order, that ownership interest, depending upon its extent, could be deemed to create an objectionable conflict for that individual, under both the regulations and the statutes that govern bail bondsmen and bail bond companies. The question of whether the ownership interest is substantial enough to constitute a violation is a question of fact that must be determined on a case-by-case basis.
I will begin my discussion of this issue by setting forth the pertinent statute and regulations. The statutes that govern bail bondsmen and bail bond companies include a provision setting forth a list of prohibitions that appear to have been designed in part to preclude situations that would give rise to conflicts of interest. The provision most pertinent to the situations you have described is the following:
 No professional bail bondsman or professional bail bond company, nor court, nor law enforcement officer, nor any individual working on behalf of a professional bail bondsman or professional bail bond company, shall:
* * *
(5) Pay a fee or rebate or give or promise anything of value to:
 (A) A jailer, policeman, peace officer, committing magistrate, or any other person who has power to arrest or to hold in custody;
A.C.A. § 17-19-105(5). I find that this provision could be pertinent to your described scenarios for the following reasons: A business that has been authorized by the court to provide interlock devices or electronic monitoring equipment pursuant to the court's order, and that is ultimately chosen to provide the devices or equipment, promises something of value to the court, which is an entity that has the power to hold in custody. The company has promised its services to facilitate execution of the court's order. Therefore if a licensed bail bondsman or the owner of a licensed professional bail bond company holds a substantial ownership interest in an interlock device company or an electronic monitoring equipment company, that company's promise of services to the court could be deemed to be tantamount to the individual's promise, which could constitute a violation of the prohibition stated above in A.C.A. §17-19-105(5)(A).
The rules and regulations that have been promulgated by the Arkansas Professional Bail Bond Licensing Board pursuant to the authority granted in A.C.A. § 17-19-106(b)(5) also prohibit situations that create conflicts of interest. Those rules and regulations include the following provision, which applies to bail bond companies:
 A bail bond company license shall not be issued or renewed if any owner, partner, stockholder or officer:
* * *
B. Is regularly or frequently employed by:
(1) A court of law;
Rules and Regulations of the Arkansas Professional Bail Bond LicensingBoard, Rule 1, § 17.
The following similar provision applies to individual bail bondsmen:
 A bail bondsman's license shall not be issued or renewed to any individual if that individual:
A. Is regularly or frequently employed by:
(1) A court of law;
Rules and Regulations of the Arkansas Professional Bail Bond LicensingBoard, Rule 1, § 18.
The Arkansas Supreme Court has not had occasion to interpret A.C.A. §17-19-105(5), quoted and discussed previously. However, in ArkansasProfessional Bail Bondsman v. Oudin, 348 Ark. 48, 69 S.W.3d 855 (2002), the court did interpret Rule 1, § 17, quoted above. The court held that the rule prohibited the dual ownership of a bail bond company and a fine-collecting company that provided collection services for a municipal court.
The defendant in that case was the owner, sole shareholder, and contact person of both the bail bond company and the fine-collecting company. His interest in both companies was therefore substantial. The Arkansas Supreme Court has not addressed the question of how substantial the ownership interest must be in order for the arrangement to constitute a violation. Some ownership interests may be de minimis. That is, some ownership interests may be so small that they would not be deemed to constitute a violation of the above quoted regulations and statute. This conclusion would be based upon the fact that if a bail bondsman or the owner of a bail bond company holds a very small ownership interest in a company that provides services to the court, his interest in that company may not be significant enough to conflict with his work as a bail bondsman or as the owner of a professional bail bond company. Because of the wide range of degrees in possible ownership interests, this issue appears to be one that can only be determined on a case-by-case basis. The guiding principle, of course, will be the intent of the pertinent statutes and regulations, which as the court noted in Oudin, supra, is to prohibit objectionable conflicts of interest. Id. at 61.
I must note another issue that is pertinent to your questions. The Oudin
court rejected an argument that because Rule 1, § 17 uses the term "employed by," it should operate only to prohibit "employment" by a court, and should not prohibit an independent contractor relationship with the court. The court reasoned that although there is a clear distinction between employees and independent contractors, it does not follow that independent contractors are not "employed," within the meaning of the regulation. Id. at 60. The court went on to state:
 A holding by this court that the regulations preventing bail bondsmen and bail bond companies from engaging in employment with courts of law do not apply where the bondsmen or bond companies are independent contractors, rather than employees, of such courts would produce absurd results. Likewise, exempting independent contractors would defeat the purpose of the regulation, which is to prevent objectionable conflicts of interest.
Id. at 61, citing A.C.A. § 17-19-105.
I also note that the Oudin court, in reaching the conclusion it did, was upholding the Board's interpretation of Rule 1, § 17. It is important to be mindful of the well-established principle that the courts will give considerable deference to an administrative agency's interpretation of its own rules and regulations, and will not overturn that interpretation unless it is clearly wrong. Cave City Nursing Home, Inc. v. ArkansasDHS, 351 Ark. 13, 89 S.W.3d 884 (2002); Death Permanent TotalDisability v. Brewer, 76 Ark. App. 348, 65 S.W.3d 463 (2002); Cyphers v.United Parcel Service, 68 Ark. App. 62, 3 S.W.3d 698 (1999); Little RockCleaning Sys. Inc. v. Weiss, 326 Ark. 1007, 935 S.W.2d 268 (1996);Douglass v. Dynamic Enters., Inc., 315 Ark. 575, 869 S.W.2d 14 (1994). Therefore if the Board chooses to interpret its rules and regulations to prohibit the scenarios you have described, that interpretation will be given considerable deference.
For all of the above reasons, I conclude that if a licensed bail bondsman or the owner of a licensed professional bail bond company holds an ownership interest in an interlock device company or an electronic monitoring device company that provides its services to a court, that ownership interest, if substantial enough, could be deemed to create an objectionable conflict of interest in violation of both the regulations and the statutes that govern licensed bail bondsmen and licensed professional bail bond companies. However, if that ownership interest isde minimis, it may be deemed not to create an objectionable conflict. The question of whether the ownership interest is substantial enough to create a conflict is a question of fact that must be determined on a case-by-case basis.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General