# ARKANSAS DEPARTMENT of HUMAN SERVICES *v.*
## A.B., a Minor

07-897 286 S.W.3d 712

Supreme Court of Arkansas
Opinion delivered September 11, 2008

Arkansas Dep't of Human Servs., Office of Chief Counsel, by: *Gray Allen Turner*, for appellant.

*Larry R. Froelich* and *George D. Oleson*, for appellee.

ANNABELLE CLINTON IMBER, Justice. The Arkansas Department of Human Services ("DHS") appeals from an order of the Benton County Circuit Court reversing an administrative law judge's decision that A.B., a minor proceeding under a fictitious name, must remain listed on the Arkansas Child Maltreatment Central Registry. DHS argues on appeal that A.B.'s due-process right to confront and cross-examine adverse witnesses was not violated and that the administrative law judge's finding of child maltreatment is supported by substantial evidence. Because this case involves the interpretation and construction of the United States and Arkansas Constitutions, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(1) (2008). We agree with DHS on both points; accordingly, we affirm the administrative law judge's decision and reverse the order of the Benton County Circuit Court.[1]

In early October of 2003, a report of suspected child maltreatment was called into the Arkansas Child Abuse Hotline. A school official reported that, in dealing with a disciplinary issue, she asked nine-year-old student B.C. if "anyone had ever touched his private parts or did anything to make him feel uncomfortable." B.C. indicated that A.B., the thirteen-year-old son of close family friends, had touched B.C.'s "privates" with his hand and with his mouth. He also stated that A.B. had made him touch A.B.'s privates. B.C. told the school official that he had recently avoided spending time alone with A.B.

B.C. provided further information in an interview conducted at the Children's Advocacy Center a few days later. A detective with the local police department observed the interview. B.C. disclosed that the genital touching occurred on multiple occasions during the 2002-2003 school year, with the latest incident occurring during the summer of 2003. He also disclosed that each of them had performed oral sex on each other and that A.B. had "humped" him. Information revealed in the interview suggested that the conduct was not consensual: B.C. stated that

---

[1] The circuit court also declared the Arkansas Child Maltreatment Act unconstitutional to the extent that it does not require pre-deprivation notice and opportunity to be heard, absent an emergency or exigent circumstances. DHS does not seek review of this issue and notes that it has modified its policies in compliance with the court's declaratory judgment. Thus, we reverse the Benton County Circuit Court's order only to the extent that it found a violation of A.B.'s rights of confrontation and cross-examination and reversed the administrative law judge's decision for lack of substantial evidence.

A.B. pulled B.C.'s pants and underwear down, instructed B.C. not to tell his parents, asked B.C. to engage in the conduct, and on one occasion grabbed B.C. by the shoulders and blocked him from leaving the room. B.C. also stated that the "humping" hurt him.

The police department continued its investigation with interviews of B.C.'s twelve-year-old sister and father. An investigator with the Arkansas State Police Crimes Against Children Division visited B.C.'s home and found no safety concerns or health hazards. The investigation appears to have ended at that point, however, and the report to the hotline was "screened out."

The investigation was reopened in July of 2004, for reasons that are not made clear in the record. A detective who had not been previously involved in the case interviewed A.B. A.B. disclosed that the conduct began when he received pornographic photographs and magazines from friends, which he then showed to B.C. A.B. stated that he and B.C. were interested in what was shown in the pictures and began playing games with their sisters that involved touching each other. At some point, A.B. and B.C. began secretly going into A.B.'s closet, shutting the door behind them, and touching each other. A.B. stated that he and B.C. would stop the genital touching when they became uncomfortable, that neither did anything the other did not like, and that neither asked the other to engage in the conduct.

A.B. admitted to pulling B.C.'s pants and underwear down but stated that B.C. also pulled his pants and underwear down. A.B. alleged that B.C. never informed him that the contact was painful. He eventually admitted that they had briefly engaged in oral sex on one occasion. A.B. averred that neither one of them asked the other to do it and that they discussed it beforehand.

A.B. was arrested for rape on July 30, 2004. He was issued a citation and released back into his father's custody. The State declined to file criminal charges against A.B. On August 16, 2004, the State Police closed the investigation with a "true" finding of child maltreatment. In a "Child Maltreatment Investigation Determination Notification" dated August 17, 2004, the Crimes Against Children Division notified A.B.'s parents that the investigation had resulted in a "true" finding. The notification also informed the parents that A.B.'s name would be placed on the Arkansas Child Maltreatment Central Registry. Notices of the finding were also sent to A.B. and B.C.'s respective schools.

Through counsel, A.B. timely requested an administrative hearing. The hearing commenced on January 25, 2005, before an

administrative law judge with the DHS Office of Appeals and Hearings. The only witness called by DHS was the detective who interviewed A.B. in 2004. He testified that, while he was not present for the interview of B.C., he had viewed a videotape of the interview and concluded based on its content that the sexual contact was not consensual. The hearing was then continued to March 15, 2005, to allow A.B.'s counsel an opportunity to view the tape-recordings of the subjects' interviews, the existence of which had not been previously disclosed. At the second hearing, DHS called no other witnesses. A.B. testified on his own behalf and also called B.C.'s father and A.B.'s mother. Although B.C. was present in the building and available to testify, neither DHS nor A.B. called him as a witness. When the administrative law judge inquired about DHS's decision not to call the alleged victim, counsel for DHS responded as follows: "Because he is nine years old, Your Honor, or at least he was nine years old when this incident happened. The Department of Human Services, as a policy, do[es] not like to traumatize children any more than absolutely necessary. . . . [Counsel for A.B.] subpoenaed the victim, Your Honor. Your Honor, DHS deals with children all the time. We do not, we do not believe in traumatizing them, that is the reason why."

The administrative law judge issued an order on April 26, 2005, finding that DHS had met its burden of proving by a preponderance of the evidence that A.B. sexually abused B.C. and, more specifically, that the acts of sexual conduct were by forcible compulsion. The order directed that A.B.'s name would remain on the Arkansas Child Maltreatment Central Registry. A.B. timely filed a petition for judicial review with the Benton County Circuit Court, in accordance with the Arkansas Administrative Procedure Act, Ark. Code Ann. §§ 25-15-201 to -218 (Repl. 2002 & Supp. 2007). The circuit court remanded the case to the Office of Appeals and Hearings on December 8, 2005, so that constitutional arguments raised by A.B. could be argued before the administrative law judge. The administrative law judge issued a revised final order on May 22, 2006, affirming his original order and finding that he had no authority to hold any statutes or procedures unconstitutional.

The Benton County Circuit Court heard oral arguments on A.B.'s petition on March 23, 2007. The court entered its order on April 16, 2007, reversing for lack of substantial evidence the administrative law judge's decision that A.B. must remain on the

registry. In that regard, the court concluded that the detective's testimony was insufficient to establish that A.B. employed forcible compulsion. Additionally, the court held that A.B. was denied a meaningful opportunity to be heard "when the State's only witness was a police officer who never interviewed the alleged victim of abuse, and whose conclusion that forcible compulsion occurred was in fact based only on another officer's opinion; and when the alleged victim, his interviewer, and the officer who observed the interview were all available to testify but the State chose not to call them to give evidence." To the extent that DHS procedures do not ensure a meaningful opportunity to be heard, to cross-examine witnesses, and to confront one's accuser, the court declared them to be unconstitutional. The court's order enjoined DHS from further due-process violations and ordered A.B.'s name removed from the Arkansas Child Maltreatment Central Registry.

DHS filed a motion to stay the declaratory injunction, a motion to vacate, and a notice of appeal. The parties agreed to temporarily stay that part of the circuit court's order that declared certain portions of the Arkansas Child Maltreatment Act and DHS procedures unconstitutional and that enjoined DHS from further due-process violations. The circuit court denied DHS's motion to vacate, and DHS subsequently filed an amended notice of appeal.

## Standard of Review

This court has stated that review of administrative agency decisions, both by the circuit court and by appellate courts, is limited in scope. *Ark. Dep't of Human Servs., St. Francis Div. of Children & Family Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). The review by appellate courts is directed not to the decision of the circuit court but to the decision of the administrative agency. *Id.* at 185, 959 S.W.2d at 48. It is not the role of the circuit courts or the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002). We review the entire record in making that determination. *Id.* at 53, 69 S.W.3d at 859.

Substantial evidence is defined as "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture." *Id.* at 55, 69 S.W.3d at 860 (quoting *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 362, 994 S.W.2d 456, 461 (1999)). The

challenging party has the burden of proving an absence of substantial evidence. *Id.*, 69 S.W.3d at 860. To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.*, 69 S.W.3d at 860. The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.*, 69 S.W.3d at 860.

This court has previously noted that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying legal issues affecting their agencies. *Id.* at 53, 69 S.W.3d at 859. This recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Id.*, 69 S.W.3d at 859. Thus, in making the substantial-evidence determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Id.* at 54, 69 S.W.3d at 859. We have stated that, between two fairly conflicting views, even if the reviewing court might have made a different choice, the agency's choice must not be displaced. *Id.*, 69 S.W.3d at 859.

The Arkansas Administrative Procedure Act also provides that a reviewing court may reverse or modify the agency's decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in violation of constitutional or statutory provisions, in excess of the agency's statutory authority, made upon unlawful procedure, affected by other error or law, not supported by substantial evidence of record, or arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h) (Repl. 2002). Thus, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h). *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin, supra.*

### Due-Process Rights

In support of its position that A.B.'s due-process rights of confrontation and cross-examination were not violated, DHS asserts that it did not shoulder the burden of calling A.B.'s accuser in the non-criminal administrative hearing. DHS also argues that

A.B. was given a meaningful opportunity to subpoena and cross-examine adverse witnesses but waived this opportunity by failing to do so. In response, A.B. avers that when the government seeks to take away constitutionally protected interests of an individual through an accusation of criminal wrongdoing, the government should present its proof in a form against which effective defense can be made through confrontation and cross-examination, unless the government can show compelling reasons to limit confrontation. In essence, A.B. argues that DHS should have presented the testimony of his accuser.

The United States Supreme Court has stated that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Furthermore, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Id.* at 269. More specifically, the Supreme Court has extended the due-process rights of confrontation and cross-examination to certain types of administrative proceedings. *Greene v. McElroy*, 360 U.S. 474 (1959).

In accordance with these principles, our court has recently reiterated that a party appearing before an administrative agency is entitled to due process in the proceedings. *C.C.B. v. Ark. Dep't of Health & Human Servs.*, 368 Ark. 540, 247 S.W.3d 870 (2007). We have also held that a fair trial by a fair tribunal is a basic requirement of due process, and that this rule applies to administrative agencies as well as to courts. *Id.* at 545, 247 S.W.3d at 873. While it is well settled that an administrative proceeding is civil in nature and that the rules of evidence need not be strictly adhered to, *id.* at 548, 247 S.W.3d at 875, our court has recognized the due-process rights of confrontation and cross-examination in certain types of administrative proceedings. *Smith v. Everett*, 276 Ark. 430, 637 S.W.2d 537 (1982); *see also Priest v. United Parcel Serv.*, 58 Ark. App. 282, 950 S.W.2d 476 (1997).

In *Hannah v. Larche*, 363 U.S. 420, 442 (1960), the Supreme Court set forth the standard used to determine when due process applies and, more importantly, what process is due:

> "Due process" is an elusive concept. *Its exact boundaries are undefinable, and its content varies according to specific factual contexts.* Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it

> is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

(Emphasis added.) In other words, whether administrative procedures are constitutionally sufficient requires analysis of the private and governmental interests that are affected. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The United States Supreme Court has identified three factors that generally must be considered: the private interest that will be affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

The Court has also stated that "[t]he ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." *Id.* at 348. In *Mathews*, the Court cautioned against "wholesale transplantation" of judicial rules of procedure to all administrative proceedings, in light of the vast differences in the function and nature of administrative agencies. *Id.* In short, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case." *Id.* at 349 (quoting *Goldberg*, 397 U.S. at 268-69).

The Arkansas Child Maltreatment Act acknowledges the rights of confrontation and cross-examination in administrative reviews of agency findings of child maltreatment. The Act provides that DHS's chief counsel is authorized to require the attendance of witnesses through the issuance of subpoenas when the

testimony is necessary to adequately present the position of DHS, the investigating protective services agency, or the alleged offender. Ark. Code Ann. § 12-12-512(c)(3) (Supp. 2007). Requests for subpoenas are required to be granted by DHS if the testimony or documents desired are considered necessary and material without being unduly repetitious of other available evidence. *Id.* § 12-12-513(a) (Repl. 2003). A consideration of the factors set out in *Mathews v. Eldridge, supra,* leads us to the conclusion that the statutorily recognized due-process rights were not violated in the instant case.

 First, we have held that mere damage to reputation is not a liberty interest that must be protected. *See C.C.B. v. Ark. Dep't of Health & Human Servs., supra.* Where a petitioner in the same situation as A.B. complained that placement on the Arkansas Child Maltreatment Central Registry might impede him from obtaining employment, we held that there was no liberty interest at stake because he had not shown that he had ever sought or was denied a specific employment opportunity due to his placement on the registry. *Id.* at 547, 247 S.W.3d at 875. Similarly, A.B. has shown nothing but the potential for prejudice. Second, in light of the statutory requirement that DHS issue subpoenas at the request of the alleged offender, we cannot say that the current procedures create a significant risk of erroneous deprivation of the alleged offender's due-process rights. Moreover, we cannot say that additional safeguards — namely, placing the burden of calling the accuser on DHS — would effectively decrease that already minute risk. When compared to the government's interest in presenting its case without unnecessarily traumatizing child victims, these factors demonstrate that DHS was not and should not have been required to call B.C. to testify.

 Furthermore, it is clear from the record that A.B. was afforded the opportunity to confront and cross-examine adverse witnesses but waived his right by failing to present their testimony. The Arkansas Court of Appeals has summarized the practical implications of the right to confront and cross-examine adverse witnesses in the non-criminal context. *Farmer v. Everett,* 8 Ark. App. 23, 648 S.W.2d 513 (1983). "First, a party must know or have an opportunity to know what evidence is being considered." *Id.* at 28, 648 S.W.2d at 516. This is based on the United States Supreme Court's holding that, "where governmental action seriously injures an individual, and the reasonableness of the action

depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene*, 360 U.S. at 496. "Second, when hearsay evidence has been submitted to the fact-finding body, a party must have the right of a rehearing for the purpose of subpoenaing and cross-examining adverse witnesses." *Farmer*, 8 Ark. App. at 29, 648 S.W.2d at 516. Our court of appeals has also recognized that the right to cross-examine may be waived by failure to exercise it. A petitioner cannot "successfully argue that he was denied an opportunity to cross-examine when it is clear that he was afforded such an opportunity but declined to exercise it." *Palazzolo v. Nelms Chevrolet*, 46 Ark. App. 130, 135, 877 S.W.2d 938, 941 (1994).

As previously noted, the Arkansas Child Maltreatment Act provides for the issuance of subpoenas by DHS at the request of the alleged offender. Ark. Code Ann. § 12-12-513. It appears from the record that A.B. did in fact subpoena B.C., but he failed to obtain his testimony during the administrative hearing. Thus, A.B. waived the right to confront and cross-examine his accuser. The record suggests that A.B. chose not to call B.C. and other adverse witnesses because he was under the impression that DHS was required to do so in order to meet its burden of proof. As stated earlier, this assertion is not supported by authority. Because A.B. was given the opportunity to subpoena and call adverse witnesses but failed to do so, he cannot now successfully argue that his due-process rights were violated.

### Substantial Evidence

For its next point on appeal, DHS asserts that the administrative law judge's finding of child maltreatment is supported by substantial evidence. In response, A.B. claims that DHS failed to prove the required elements of sexual gratification and forcible compulsion. A.B. also argues that the "adverse inference rule" should have given rise to a presumption or inference that B.C.'s testimony would have been harmful to DHS's case for forcible compulsion, due to its failure to obtain his testimony.

"Child maltreatment" is defined in the Arkansas Child Maltreatment Act as "abuse, sexual abuse, neglect, sexual exploitation, or abandonment." Ark. Code Ann. § 12-12-503(6) (Supp. 2007). The administrative law judge concluded that A.B. had committed child maltreatment by sexually abusing B.C. The

definition of sexual abuse includes any of the following by a person ten years of age or older to a person younger than eighteen years of age: 1) sexual intercourse, deviate sexual activity, or sexual contact by forcible compulsion; 2) attempted sexual intercourse, deviate sexual activity, or sexual contact by forcible compulsion; 3) indecent exposure; 4) forcing the watching of pornography or live sexual activity. *Id.* § 12-12-503(17)(A). It is undisputed that A.B. was ten years of age or older at the time of the alleged incidents and that B.C. was younger than eighteen years of age at the time of the alleged incidents. DHS did not allege indecent exposure or forcing the watching of pornography or live sexual activity. Thus, all that is required is proof that A.B. engaged in actual or attempted sexual intercourse, deviate sexual activity, or sexual contact by forcible compulsion with B.C.

"Deviate sexual activity" is defined as any act of sexual gratification involving penetration, however slight, of the anus or mouth of one person by the penis of another person or penetration, however slight, or the labia majora or anus of one person by any body member or foreign instrument manipulated by another person. *Id.* § 12-12-503(8). "Sexual contact" is defined as any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female, the encouraging of a child to touch the offender in a sexual manner, or the offender requesting to touch a child in a sexual manner. *Id.* § 12-12-503(18)(A)(i). Evidence of sexual gratification may be inferred from the attendant circumstances surrounding the specific complaint of child maltreatment. *Id.* § 12-12-503(18)(A)(ii). Finally, "forcible compulsion" is defined as physical force, intimidation, or a threat, express or implied, of physical injury to or death, rape, sexual abuse, or kidnapping of any person. *Id.* § 12-12-503(9)(A)(i). If the act was committed against the will of the juvenile, then forcible compulsion has been used. *Id.* § 12-12-503(9)(A)(ii).

We hold that there is substantial evidence to support the conclusion that A.B. engaged in both deviate sexual activity and sexual contact by forcible compulsion with B.C. The statements of both boys indicated that A.B.'s penis penetrated B.C.'s mouth. Moreover, both boys admitted that A.B. had touched B.C.'s sex organs and buttocks. B.C.'s father testified at the administrative hearing that his son had disclosed to him that A.B. had "encouraged" the touching. Finally, B.C.'s statement indi-

cated that the acts were committed against his will, which supports a finding of forcible compulsion. He disclosed that A.B. pulled B.C.'s pants and underwear down, instructed B.C. not to tell his parents, asked B.C. to engage in the conduct, and on one occasion grabbed B.C. by the shoulders and blocked him from leaving the room. In addition, B.C. reported that pain resulted from the "humping."

We do not find merit in A.B.'s argument that DHS failed to prove sexual gratification. As to sexual contact, evidence of sexual gratification may be inferred from the attendant circumstances surrounding the specific complaint of child maltreatment. Ark. Code Ann. § 12-12-503(18)(A)(ii). A.B. claims that his testimony pointed to childish curiosity, rather than sexual gratification, as a motive. However, the attendant circumstances showed that the conduct with B.C. began after A.B. viewed pornographic photographs and magazines. Such evidence easily gives rise to an inference that A.B., a pubescent male, was motivated by sexual gratification.

We also reject A.B.'s argument that DHS failed to prove forcible compulsion. In addition to the evidence showing that the acts occurred against B.C.'s will, the relative ages of and relationship between the two boys support a finding of forcible compulsion. The statute provides that the age, developmental stage, and stature of the victim and the relationship of the victim to the assailant, as well as the threat of deprivation of affection, rights, and privileges from the victim by the assailant, shall be considered in weighing the sufficiency of the evidence to prove compulsion. Ark. Code Ann. § 12-12-503(9)(B). At the time of the alleged incidents, A.B. was between twelve and thirteen years of age, while B.C. was between eight and nine years of age. The stark difference in their developmental stages is reflected in their videotaped interviews.[2] In addition, the boys were close friends who, by virtue of their parents' very close friendship, spent significant amounts of time together.

We acknowledge that the issue of forcible compulsion was strongly controverted. A.B.'s testimony conflicted with B.C.'s statements and suggested that all contact was mutual. However,

---

[2] The record filed under seal includes these taped interviews.

our standard for review of administrative decisions is highly deferential. The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin, supra.* We have stated that, between two fairly conflicting views, even if the reviewing court might have made a different choice, the agency's choice must not be displaced. *Id.* at 54, 69 S.W.3d at 859. Pursuant to this standard, we must conclude that substantial evidence supports the finding of child maltreatment.

■ Finally, we find A.B.'s argument regarding the "adverse inference rule" to be meritless. First, the case relied upon by A.B., *Int'l Union v. NLRB,* notes that the presumption is "always open to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure." 459 F.2d 1329, 1336 (D.C. Cir. 1972) (quoting 2 J. Wigmore, *Evidence* § 285 (3d ed. 1940)). At the administrative hearing, DHS offered a reasonable explanation for its decision not to present B.C.'s testimony; specifically, DHS sought to avoid further traumatizing the child. Moreover, our cases recognizing the inference have done so in situations where documentary evidence was not produced, *see Corn v. Ark. Warehouse Corp.,* 243 Ark. 130, 419 S.W.2d 316 (1967); *Mutual Relief Ass'n v. Weatherly,* 172 Ark. 991, 291 S.W. 74 (1927), or in situations where a witness with special knowledge of a transaction does not testify, *see Nat'l Life Co. v. Brennecke,* 195 Ark. 1088, 115 S.W.2d 855 (1938). A.B. has failed to point us to authority that would support the application of the presumption in the instant case.

The order of the circuit court is reversed, and the decision of the Arkansas Department of Human Services is reinstated.

GLAZE, J., not participating.