Michael McHenry, who works with the Arkansas State Police Crimes Against Children Division, testified without objection that he observed Lindsey Carter, a child advocate and forensic interviewer at the Children's Safety Center, conduct an interview with MO. MO disclosed the sexual assault during the interview and stated she had told Katrinda in March 2018 what Joseia was doing to her.
Still without objection, McHenry continued to testify regarding specific allegations MO had made during her interview. MO revealed that on at least two occasions Joseia told her to take off her clothes, rubbed her "boobs," and "put his thing" in her "bottom hole," which she clarified was her "butt." MO stated that on one occasion Joseia did not have anything on his penis, but nothing came out of his penis that time because the family returned to the house in "the middle of the incident." MO also disclosed that he had rubbed her vagina with his "thing" until white stuff came out.
MO also reported in the interview that Joseia had put his "thing" in her hole where she poops, that he used baby oil, and that he stopped when white stuff came out of his "thing." She said that Joseia would have her touch his "thing" and move her hand back and forth on it until white stuff came out, telling her to squeeze harder. Finally, MO reported in the interview that Joseia had shown her videos of a girl and a guy with their clothes off having sex. Joseia told her not to tell anyone what they were doing and that he was just teaching her things she needed to know when she got a boyfriend. She told the interviewer she was very scared to go home and did not want to be around Joseia or Katrinda.
McHenry then testified that his investigation resulted in a true finding against Joseia on MO's allegations of sexual abuse. He explained that Joseia and Katrinda were interviewed by another detective and that Joseia denied the allegations and described MO as a liar. McHenry did not witness those interviews but read or was told about them as part of his investigation.
McHenry acknowledged that the Washington County Prosecutor's Office declined to pursue charges. He further stated he had made a true finding against JL regarding MO's allegations that he, too, had sexually abused her, but he was not aware the finding was found to be unsubstantiated by the administrative law judge. McHenry was also aware MO was temporarily placed with two school teachers but had no knowledge of MO's accusing one of the teachers of sexual abuse or that she had accused another caretaker of sexual abuse.
The defense then presented its case, beginning with Katrinda's testimony. Katrinda acknowledged MO told her one time that Joseia was sexually abusing her, but she did not believe MO. Joseia denied it when Katrinda asked him about it, and Katrinda believed Joseia. Katrinda stated that MO had told lies since she was very little. Katrinda further testified that MO got a check each month for mental disability *38 and was in special education at school. She stated kids at school did not like MO and that she stole things. Katrinda reported that MO was raped by an unknown assailant when she was about six years old and that MO had accused her "uncle" of sexually abusing her. She said she did not think it would be good for MO to return home because MO had said things that were not true.
Joseia testified that he and Katrinda had custody of MO and RO. He denied MO's allegations of abuse and believed she was lying because she wanted to live with her father. Joseia explained how upset he had been about the allegations.
Following the hearing, the trial court concluded MO was dependent-neglected and specifically found that MO "disclosed facts that would not be known to a child of this age, especially if she was delayed, about white stuff coming out of the penis" and other vivid details.
Counsel for Joseia candidly acknowledges trial counsel did not raise a hearsay objection (1) when O'Malley testified about the things that were reported to her concerning MO's sexual-abuse allegations; (2) when O'Malley's record of the medical examination she performed on MO was introduced as State's exhibit No. 5; and (3) when McHenry testified about what he had heard MO say in the forensic interview he observed. Counsel further acknowledges that because the hearsay issue was not raised below, it was not preserved for this court to address on appeal.
Evidence admitted without objection may constitute substantial evidence. See, e.g. , Jones v. State , 332 Ark. 617, 967 S.W.2d 559 (1998) ; Moseby v. State , 2010 Ark. App. 5, 2010 WL 26392. Acknowledging that he is precluded from raising the hearsay objections for the first time on appeal, Joseia's counsel nevertheless extrapolates from Cochran v. Arkansas Department of Human Services , 43 Ark. App. 116, 860 S.W.2d 748 (1993), arguing that the trial court could not adequately judge MO's credibility based on hearsay. In other words, counsel contends the trial court cannot resolve credibility issues by crediting "testimony" from an absent victim, MO, over other inconsistent evidence such as Joseia's denial, Katrinda's testimony about MO's history of lying and making other sexual-abuse allegations, and the results of the sex-abuse examination showing normal findings. Counsel asserts that the burden of proof was on DHS and that DHS did not make MO available for cross-examination to aid in the trial court's credibility determination. Counsel concludes by arguing that the trial court's credibility determination was therefore void of substance, rendering it clearly erroneous. We are not persuaded.
DHS was not required to call witnesses that parents' counsel might want to cross-examine in order to demonstrate credibility and meet its burden of proof. See Ark. Dep't of Human Servs. v. A.B. , 374 Ark. 193, 286 S.W.3d 712 (2008). Here, because there were no hearsay objections or objections of any other kind, the trial court had before it the following evidence: testimony from a sexual-assault nurse detailing a report she received from the Children's Advocacy Center about MO's statements regarding sexual abuse; the record of the nurse's medical examination of MO (State's exhibit No. 5), which included the reports she received of the alleged abuse; the nurse's expert opinion that the absence of physical findings did not negate sexual contact; and McHenry's testimony about the specific allegations of sexual abuse MO made during her interview with Lindsey Carter. The trial court weighed the evidence presented by DHS against other conflicting evidence and concluded Joseia had sexually abused MO. We defer to the *39 trial court's superior position, ability, and opportunity to observe witnesses and judge credibility, especially in cases involving minor children. See, e.g. , Carrillo v. Ibarra , 2019 Ark. App. 189, 575 S.W.3d 151. The evidence presented, without objection, supports the trial court's finding that MO was dependent-neglected based on its determination that Joseia had sexually abused MO. We are not left with a definite and firm conviction that the trial court made a mistake in so finding and therefore affirm.
Affirmed.
Gladwin and Hixson, JJ., agree.