Cite as 2020 Ark. App. 567

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-18-981

| | |
|---|---|
| KOSMIC KIDZ OUTREACH, INC., AND FREDRICK JACKSON  APPELLANTS <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES AND CINDY GILLESPIE <br><br> APPELLEES | **Opinion Delivered:** December 9, 2020 <br><br> APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-17-3] <br><br> HONORABLE ROBERT H. WYATT, JR., JUDGE <br><br> AFFIRMED |

**KENNETH S. HIXSON, Judge**

Kosmic Kidz Outreach, Inc. (Kosmic Kidz), is a nonprofit community organization that participated in the federally funded Child and Adult Care Food Program (CACFP or the "Program") designed to provide food to children and adults who qualify for such assistance. Fredrick Jackson (Jackson) serves as the director for Kosmic Kidz. CACFP is a federal program regulated by 7 C.F.R. Parts 235 and 226 and administered in this state through the Arkansas Department of Human Services (DHS or "program administrator"). Appellants Kosmic Kidz and Jackson appeal after the Jefferson County Circuit Court filed an August 9, 2018, order denying judicial review from the decision of the administrative law judge (ALJ) entered on December 6, 2016, in favor of appellees DHS and Cindy

Gillespie (Gillespie), the director of DHS.[1]  The ALJ found that DHS[2] correctly demanded Kosmic Kidz to repay $270,623.98.  On appeal, appellants contend that (1) the agency's finding that Kosmic Kidz failed to comply with the meal-component requirements of CACFP was not supported by substantial evidence and was based on unlawful procedures; (2) the agency's finding that Kosmic Kidz submitted claims for ineligible sites was not supported by substantial evidence; (3) the agency's finding that Kosmic Kidz failed to timely serve meals at Quest Charter Schools was not supported by substantial evidence; (4) the agency's finding that Kosmic Kidz did not have an arm's length transaction regarding the building lease was not supported by substantial evidence and was based on unlawful procedures and unconstitutional; (5) the agency's finding that Kosmic Kidz did not have an arm's length transaction regarding vans and box trucks was not supported by substantial evidence and was based on unlawful procedures and unconstitutional; and (6) the agency's finding that Kosmic Kidz failed to provide receipts was not supported by substantial evidence.  We affirm.

---

[1]Gillespie was not named as a party in this action until Kosmic Kidz and Jackson petitioned in the circuit court for judicial review from the decision of the ALJ.  At that time, appellees argued in their answer that it was improper for appellants to add Gillespie as a named party.  Because the circuit court did not specifically rule on this issue nor did the parties raise this issue in their briefs, we do not address it in this opinion.

[2]The ALJ refers at times throughout the opinion to the specific division of DHS—the Division of Child Care and Early Childhood Education (DCCECE)—that communicated with Kosmic Kidz.  We simply reference DHS in this opinion without distinguishing between the general department and specific division.

## I. *CACFP Background*

CACFP was created by 42 U.S.C. § 1766 (2018) and is funded by the Food and Nutrition Services Department (FNS) of the United States Department of Agriculture (USDA). CACFP assists states through grants and other means "to initiate and maintain nonprofit food service programs for children in institutions providing child care." 42 U.S.C. § 1766(a)(1). The USDA is tasked with establishing guidelines for an institution's participation in CACFP, which it accomplishes partially by promulgating regulations in the Code of Federal Regulations (the C.F.R.). *See generally* 42 U.S.C. § 1766.

The USDA makes funds available to state agencies that administer CACFP to reimburse participating institutions "for their costs in connection with food service operations, including administrative expenses." 7 C.F.R. §§ 226.1, 226.3, 226.4(a). States administering CACFP are charged with ensuring that participating institutions are administratively capable, financially viable, and possess internal controls to ensure program accountability. 42 U.S.C. § 1766(d). CACFP is governed by a federal–state agreement, which provides that the state agency charged with administering CACFP will comply with the program statutes and program regulations. 7 C.F.R. § 226.3. In Arkansas, DHS administers CACFP.

Institutions like Kosmic Kidz that participate in CACFP are governed by reimbursement agreements, which regulate the respective responsibilities of DHS and the participating institution. Institutions are allowed to claim reimbursement only for eligible meals and expenses, and reimbursements are permitted only to those institutions in compliance with the terms of the agreements and related regulations. *See* 7 C.F.R. §§

3

226.10 and 226.14. To ensure that the reimbursements are allowable, the program administrator (DHS in our state) has the authority to perform periodic compliance reviews of the institutions such as Kosmic Kidz. Should a compliance review reveal one or more serious deficiencies,[3] the program administrator shall issue a notice of serious deficiency advising both the institution and the individuals responsible for the institution[4] of the specific deficiencies and necessary corrective actions. 7 C.F.R. § 226.6(c)(3)(iii)(A). Additionally, the program administrator shall disallow any portion of a claim for reimbursement and recover any payment to an institution not properly payable under this part. 7 C.F.R. § 226.14(a). A notice of serious deficiency also contains a warning to the institution that

---

[3]A list of serious deficiencies is provided in 7 C.F.R. § 226.6(c)(3)(ii) and includes "[f]ailure to operate the Program in conformance with performance standards," "[f]ailure to perform any of the other financial and administrative responsibilities required by this part," "[f]ailure to maintain adequate records," and "[c]laiming reimbursement for a significant number of meals that do not meet Program requirements."

[4]The regulations state that when a proposed termination and disqualification is enforced, it applies not only to the institution but also to the institution's responsible principals and individuals. 7 C.F.R. § 226.6(c)(3)(iii)(E)*(1)*. "Principal" is defined by the regulations as "any individual who holds a management position within, or is an officer of, an institution or a sponsored center." 7 C.F.R. § 226.2. A "[r]esponsible principal or responsible individual" is defined as:

(a) A principal, whether compensated or uncompensated, who the [s]tate agency or FNS determines to be responsible for an institution's serious deficiency;

(b) Any other individual employed by, or under contract with, an institution or sponsored center, who the [s]tate agency or FNS determines to be responsible for an institution's serious deficiency; or

(c) An uncompensated individual who the [s]tate agency or FNS determines to be responsible for an institution's serious deficiency.

*Id*.

4

"failure to fully and permanently correct the serious deficiency(ies) within the allotted time will result in the [s]tate agency's proposed termination of the institution's agreement and the proposed disqualification of the institution and the responsible principals and individuals" of the institution. 7 C.F.R. § 226.6(c)(3)(iii)(A)*(5)*.

If "corrective action is not taken to fully and permanently correct the serious deficiency" after a notice of serious deficiency, the state agency shall notify the institution and its responsible principals of the proposed termination of the CACFP agreement and disqualification of "the institution and the responsible principals and responsible individuals" from future participation. 7 C.F.R. § 226.6(c)(3)(iii)(C). Until participation is officially "suspended, the institution may continue to participate" in CACFP and receive reimbursement for eligible meals. 7 C.F.R. § 226.6(c)(3)(iii)(C)*(5)*.

Once the program administrator issues a notice of proposed termination and disqualification and demand of overpayment, it must offer an administrative review for the institutions, responsible principals, and responsible individuals. 7 C.F.R. § 226.6(k). If an institution, its principals, and responsible individuals are terminated from CACFP, they are placed on a national list disqualifying them from future participation in the program. The institution, its principals, and responsible individuals remain on the national disqualification list until the state agency "determines that the serious deficienc[ies] that led to their placement on the list [have] been corrected, or until seven years have elapsed since they were disqualified from participation." 7 C.F.R. § 226.6(c)(7)(v).

5

II. *Relevant Facts*

Kosmic Kidz is a nonprofit community organization and was originally approved to participate in CACFP in 2013. Fredrick Jackson has been the director since 2013. In January 2016, DHS conducted a compliance review of Kosmic Kidz. The review focused primarily on the month of November 2015 but also included other periods. The review included examining documentation supporting the program's claims for reimbursement and examining documentation supporting expenses associated with administering the program. The review also consisted of reviewing approved sites operated by Kosmic Kidz.

On April 7, 2016, DHS issued a "Notice of Serious Deficiency/Need for Corrective Action Plan" against Kosmic Kidz and "Notice of Fiscal Action/Right to Appeal" (collectively hereafter referred to as "April 2016 Notice" or simply "the Notice").[5] In the April 2016 Notice, DHS made fifteen findings against Kosmic Kidz; however, only the following six findings are relevant to this appeal:

> Finding #1: [Kosmic Kidz] failed to comply with the meal component requirements of CACFP for the review period of November 1 through November 30, 2015, [Kosmic Kidz] served Switch, a carbonated 8oz fruit, as the only fruit/vegetable component for supper.
>
> . . . .
>
> Finding #2: [Kosmic Kidz] failed to properly submit claims at the following day care center sites for the month of November, 2015: The sites were not eligible to claim afterschool at-risk snack and supper meals for a particular child who is receiving meals under another component of the program on the same day.
>
> . . . .

---

[5]Despite its title, this Notice is one document.

6

Finding #3: [Kosmic Kidz] at the Quest [Charter] School site failed to serve at-risk supper and snack meals at the end of the school day. The Quest [Charter] School day ends at 3:10 p.m. each day. Children are released from classes at 2:45 p.m. in order to receive a meal and snack daily before going home.

. . . .

Finding #9: [Kosmic Kidz] failed to enter into a lease agreement with a bona fide third party. [Kosmic Kidz] provided a copy of a lease agreement for the kitchen facility . . . The lease agreement is between [Kosmic Kidz] and Creative Focus in the amount of [$3,800] per month. A review of the Jefferson County Tax Assessor's Records lists Mr. Fredrick Jackson, Director, [Kosmic Kidz] as the owner of the real property in question. Furthermore, the Jefferson County Tax Assessor's Records places a fair market value of [$37,900] on the real property in question. Based on review of the lease agreement and the parties involved, this is not a bona fide third party lease agreement and the amount of the lease is disallowed for the [October 2015 through January 2016] period of review.

. . . .

Finding #10: [Kosmic Kidz] leased vans and box trucks from Kosmic Kidz Learning Center in the amount of [$47,000] per month. The Director of [Kosmic Kidz] is Director Fredrick Jackson and the Director/Owner of Kosmic Kidz Learning Center is Mrs. Donna Jackson, the spouse of Mr. Fredrick Jackson. This expense is an unallowable cost because it's within "arm's length" between the two parties that are related. Based on review of the lease agreement and the parties that are involved, this is not a bona fide third party lease agreement and is disallowed for the [October 2015 through January 2016] period of review.

. . . .

Finding #13: [Kosmic Kidz] issued checks payable to Mr. Fredrick Jackson that were not payroll checks; the statement written in the memo lines was "non-food refund." More specifically, the bank statements showed two checks that were paid directly to Mr. Jackson. One payment was written on the 5th of November in the amount of $10,315.35 for repayment of September 2015 non-food items. The second payment was written on the 27th of November in the amount of [$17,459.05] for refund for October 2014 non-food items. The total of non-food repayments Mr. Jackson made back to himself was [$27,774.40]. None of these payments were supported by invoices or receipts. This sum is disallowed and must be returned to the State Agency.

The April 2016 Notice demanded repayment in the amount of $286,886.12 for meals and other expenses for which Kosmic Kidz improperly claimed reimbursement. The Notice also required Kosmic Kidz to submit a "Corrective Action Plan" (CAP) by May 2, 2016, to correct the deficiencies. In its CAP, Kosmic Kidz was required to describe the procedures that were implemented to address the serious deficiencies and to prevent a recurrence. Moreover, Kosmic Kidz was required to provide the written procedures and internal controls, board minutes, and other supporting documentation to show that the corrective procedures were implemented. In addition to demanding repayment of the moneys received as set forth in the findings, the Notice warned that if Kosmic Kidz did not fully and permanently correct all the serious deficiencies and submit documentation of the CAP by May 2, 2015, DHS could immediately terminate the agreement and immediately propose to disqualify Kosmic Kidz and its principals from the program. The Notice further warned of the consequences of being placed on the National Disqualified List.

On April 20, 2016, Kosmic Kidz requested an administrative hearing to review DHS's demands for repayment.[6] After several continuances were granted, at least one of which was requested by Kosmic Kidz, an administrative hearing was held on October 13, 2016, in which testimony was taken and evidence submitted. At the beginning of the hearing, Kosmic Kidz requested yet another continuance in order to subpoena and secure additional witnesses it deemed necessary. DHS objected and maintained that it was Kosmic

---

[6]We note that Kosmic Kidz and Jackson also requested an administrative hearing from DHS's decision to terminate and disqualify Kosmic Kidz and Jackson from future CACFP participation. An opinion from that appeal regarding those proceedings is also handed down today. *See Kosmic Kidz Outreach, Inc. v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 572, 614 S.W.3d 880.

Kidz's responsibility to serve subpoenas to its own witnesses and Kosmic Kidz's failure to do so should not further delay the hearing. The ALJ ruled that DHS would be allowed to present its case-in-chief without delay and that Kosmic Kidz could renew its motion for a continuance after DHS concluded with its presentation of witnesses.

Perry Dwayne Hunter, a care service specialist for DHS, testified that he conducted the compliance review of Kosmic Kidz. He explained that a compliance review involved ensuring that Kosmic Kidz was following all the regulations for the program, including whether the children were being provided appropriate meals and whether the institution was complying with the financial responsibilities of the program. The program provides reimbursement for meals and may cover certain allowable business costs. Hunter explained that DHS determined that Kosmic Kidz was seriously deficient after the review.

Hunter provided testimony concerning each of the six serious deficiencies demanding repayment as set forth in the Notice. Regarding Finding #1, that Kosmic Kidz failed to comply with the meal-component requirements, Hunter testified that he discovered that the meals provided by Kosmic Kidz during the month of November 2015 were of the wrong portion size. Hunter explained that Kosmic Kidz was serving a carbonated fruit drink, Switch, in lieu of the fruit and vegetable component of the meal. Hunter testified that by serving Switch in lieu of the appropriate fruit and vegetable component, Kosmic Kidz failed to comply with the meal-component requirements of CACFP. Hunter testified generally that DHS determined that the total overclaim for the insufficient fruit and vegetable component for supper meals was $48,170.10. Additional

9

testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #1 is set forth below in the *Discussion* portion of this opinion.

Regarding Finding #2, that Kosmic Kidz failed to properly submit claims for some of the day-care-center sites, Hunter testified generally that he discovered that Kosmic Kidz was serving meals that were not eligible for reimbursement because the children had already received the maximum number of meals under another component of the program at other sites on the same day in violation of the federal regulations. Hunter also testified that Kosmic Kidz failed to comply with the existing CACFP agreement which requires them to advise the state agency—DHS—of substantive changes to any at-risk afterschool care-center program and failure to provide the state agency—DHS—with sufficient information to demonstrate that the new centers meet the requirements of CACFP. Hunter testified that DHS determined that the total overclaim for ineligible day-care centers as at-risk sites was $27,237.06. Additional testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #2 is set forth below in the *Discussion* portion of this opinion.

Regarding Finding #3, that Kosmic Kidz failed to serve at-risk supper and snack meals at the end of the school day at the Quest Charter School site, Hunter testified generally that Kosmic Kidz was serving the meals and snacks before the children were released from their full educational day in violation of the federal regulations. Hunter testified that DHS personnel witnessed children being released early from class to receive a snack and meal. Also, Hunter said that school staff admitted that children were being released early. Hunter testified that DHS determined that the total overclaim for ineligible charter-school sites was

$4,479.48. Additional testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #3 is set forth below in the *Discussion* portion of this opinion.

Regarding Finding #9, that Kosmic Kidz failed to enter into a lease agreement with a bona fide third party for its kitchen facility, Hunter testified he discovered that the meals were prepared at a facility that Kosmic Kidz leased from Creative Focus. Upon further investigation, Hunter determined that Creative Focus is a business owned by Jackson. There are two leases in our record covering two different periods of time. The first commercial lease agreement regarding the kitchen facility is dated October 1, 2014, and is between landlord Creative Focus and tenant Kosmic Kidz. The second commercial lease agreement regarding the kitchen facility is dated October 1, 2015, and is between landlord Jackson and tenant Kosmic Kidz. Hunter explained that the lease agreement between Kosmic Kidz, operated by Jackson, and Jackson, as landlord, was not an arm's length transaction as required by the federal regulations. Therefore, Hunter testified that it was determined for the four-month period that he reviewed on this finding, Kosmic Kidz was overpaid in the amount of $15,200. Additional testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #9 is set forth below in the *Discussion* portion of this opinion.

Regarding Finding #10, that Kosmic Kidz leased vans and box trucks from Kosmic Kidz Learning Center, Hunter testified Kosmic Kidz leased eleven vehicles from Kosmic Kidz Learning Center at a rate of $47,000 a month. Hunter determined that Kosmic Kidz Learning Center is owned by Jackson's wife and that the vehicle lease agreement between Kosmic Kidz, operated by Jackson, and Kosmic Kidz Learning Center, operated by Jackson's wife, was not an arm's length transaction as required by the federal regulations. As such,

Hunter testified that DHS determined for the period that he reviewed on this finding, $175,000 of the claims were disallowed. Additional testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #10 is set forth below in the *Discussion* portion of this opinion.

Regarding Finding #13, that Kosmic Kidz issued checks payable to Fredrick Jackson in the total amount of $27,774.40 that were not payroll checks and without backup documentation, Hunter testified that he discovered two checks issued in November to Jackson that indicated in the memo line that they were nonfood refund checks from previous months. Hunter stated that because Kosmic Kidz did not provide invoices, receipts, or other documentation for any out-of-pocket expenses that were paid by Jackson to justify the issuance of those checks, those two checks were disallowed under the regulations. Additional testimony provided by Hunter and on behalf of Kosmic Kidz regarding Finding #13 is set forth below in the *Discussion* portion of this opinion.

At the conclusion of the presentation of evidence by DHS, Kosmic Kidz renewed its motion for a continuance to present additional witnesses. The ALJ denied its motion and explained that Kosmic Kidz had the opportunity and responsibility to subpoena its own witnesses but failed to do so.

Kosmic Kidz offered the testimony of Curtis Curry, an employee of Kosmic Kidz and former employee of DHS, who stated that he was involved throughout the review process on behalf of Kosmic Kidz. Curry testified that he had conversations with the DHS compliance manager, Mark Speight, about the deficiency findings necessitating corrective action. Curry testified that Speight told him that they needed to take some correction action

and that Speight would later "negotiate" some of the findings when they met. According to Curry, Speight left the agency in early May. Curry testified that he had knowledge of "Super circular 200," a memorandum that was released in 2013 explaining new regulations and policies that would be released in 2016 or 2017. Curry further testified that DHS failed to train staff members regarding super circular 200 and how to address arm's-length-transaction issues. In fact, Curry complained that DHS ran the CACFP program inefficiently and claimed that DHS staff members were not properly trained. Curry claimed that Speight was aware of the related-party transactions after Kosmic Kidz had previously been reviewed. He explained that the purpose of reviewing less than arm's length transactions was to ensure that the cost involved in that transaction was not greater than it would have been in another transaction. Curry opined that the costs involved in this case were in line with market rates.

Curry also took issue with the other deficiency findings in which DHS demanded repayment and explained that they were inconsistent with the overall intent of the CACFP program that no child should be left hungry. Although he admitted that he had not spoken to the program coordinator or the campus director at Quest Charter School, he testified that he did not know why Kosmic Kidz was disallowed from serving meals at the school because Kosmic Kidz had no authority to dictate the school's schedule. Curry also thought Kosmic Kidz was being unfairly targeted after it self-reported and questioned DHS about using the Switch drinks. Jackson apparently inquired whether the Switch drinks they had been using were sufficient, and DHS communicated that another vegetable or fruit needed to be added to be allowable. The site review took place approximately a month later. Curry

13

testified that he thought DHS was harassing Jackson along with other "black owned programs." In summary, Curry opined that DHS should not have been reviewing Kosmic Kidz's October and November documentation, should have held an exit review meeting to allow Kosmic Kidz another opportunity to clarify any discrepancies, and should not have disallowed all the expenses.

Fredrick Jackson, the director of Kosmic Kidz, testified concerning the overall operation of Kosmic Kidz and concerning the findings of deficiencies for which DHS demanded repayment. Regarding Finding # 1, that Kosmic Kidz failed to comply with the meal–component requirements, Jackson testified that he was told at a food show that the drink, Switch, was equivalent to two servings of fruits or vegetables and that he subsequently received a promotional flier to that effect. Therefore, he used the drinks as a substitute on the basis of those representations. Sometime thereafter, Jackson notified DHS that he had been using Switch and asked if that was appropriate. Jackson testified that after he was told that another fruit or vegetable had to accompany the drink to be allowable, he made the change the next day.

Regarding Finding #2, that Kosmic Kidz failed to properly submit claims for some of the day-care-center sites, Jackson testified that Kosmic Kidz served somewhere between seventy-three and seventy-seven sites. Regarding the disallowed meals served at certain sites, Jackson stated that he thought all the meals were allowable. He understood the regulations to mean that five meals could be served at a site as long as the meals were being provided by two different entities. Therefore, Jackson thought those sites that were already participating in the CACFP program could serve three meals during the day, and Kosmic

14

Kidz could still provide two evening meals. Jackson also claimed that four sites listed in the April 2016 notice were not participating in the CACFP program to his knowledge. Therefore, he stated that for those four sites, the two meals provided by Kosmic Kidz should have been allowable.

Regarding Finding #3, that Kosmic Kidz at the Quest Charter School site failed to serve at-risk supper and snack meals at the end of the school day, Jackson testified that he disputed the deficiency finding in which DHS demanded repayment. He claimed that when the children were released to have their snack, they were not taken back to class for additional instruction. Moreover, not all the children received meals, so those children were allowed to go home after being released. Therefore, he thought the school day was over.

Regarding Finding #9, that Kosmic Kidz failed to enter into a lease agreement with a bona fide third party for its kitchen facility, Jackson testified that he never received any training regarding less than arm's length transactions nor was he told that he needed prior approval. Jackson admitted that he and his wife personally own the building used by Kosmic Kidz. Kosmic Kidz rented the building for $3,800 a month, and the ownership costs were approximately $2,100 a month after payment of taxes and insurance. Jackson stated that they purchased the building in 2013 for $37,000 and estimated that they invested another $300,000 to renovate the building. Therefore, Jackson testified that Jefferson County failed to properly appraise the value of his property when it appraised the property at only $37,900.

Regarding Finding #10, that Kosmic Kidz leased vans and box trucks from Kosmic Kidz Learning Center, Jackson admitted that his wife owns Kosmic Kidz Learning Center and that Kosmic Kidz leases vans from Kosmic Kidz Learning Center for $47,000 a month.

15

Jackson explained that the lease amount was determined by looking up other quotes online. Jackson denied that he tried to hide anything from DHS, and he claimed that DHS failed to request any specific records to determine their costs of ownership for the building or trucks.

Regarding Finding #13, that Kosmic Kidz issued checks payable to Jackson that were not payroll checks and without backup documentation, Jackson testified that he was never asked to provide documentation from September that substantiated the issuance of those checks. Jackson claimed that Hunter stamped the receipts but did not review them or take them with him. Jackson stated that he had the receipts that he could have given DHS had they held an exit review meeting with him. Jackson admitted that he did not bring those receipts with him to the hearing.

On December 6, 2016, the ALJ issued a final order. The ALJ found that DHS correctly determined that Kosmic Kidz failed to comply with the program requirements listed in each of the litigated findings. The ALJ also found that DHS correctly demanded repayment but found that the correct amount of repayment was $270,623.98 instead of the $286,886.12 that was demanded in the April 2016 Notice.

Appellants Kosmic Kidz and Jackson timely filed their petition for judicial review in the Jefferson County Circuit Court on January 9, 2017, specifically naming DHS and Gillespie as the "Respondent." In their petition, they alleged that they were entitled to relief from the agency's decision because it was in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; not supported by substantial evidence of record; affected by other error or law; and arbitrary,

capricious, and characterized by an abuse of discretion. Appellants further requested to present additional witnesses and evidence.

DHS filed an answer on February 10, 2017, generally denying the allegations. It further explained that appellants were not entitled to present additional evidence or witnesses. Finally, DHS asserted that Gillespie was not a proper party to the action as the Arkansas Administrative Procedure Act provides for a review of only the decision of the administrative agency. Thus, DHS prayed that the petition be dismissed, that the decision of DHS be affirmed in all respects, and that Gillespie be dismissed from this action.

After a hearing on August 3, 2018, in which the circuit court heard oral argument from the parties, the circuit court found that there was sufficient proof in the record to support the ALJ's findings and that those findings were not in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error or law; or arbitrary, capricious, or characterized by an abuse of discretion. This appeal followed.

### III. *Standard of Review*

Review of administrative-agency decisions by appellate courts is limited in scope. *Ark. Dep't of Human Servs. v. A.B.*, 374 Ark. 193, 286 S.W.3d 712 (2008). The review by appellate courts is directed not to the decision of the circuit court but to the decision of the administrative agency. *Id.* It is not the role of the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Id.* We review the entire record in making that determination. *Id.*

Substantial evidence is defined as "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture." *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 55, 69 S.W.3d 855, 860 (2002) (quoting *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 362, 994 S.W.2d 456, 461 (1999)). The challenging party has the burden of proving an absence of substantial evidence. *Oudin*, *supra*. To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.*

Our supreme court has previously noted that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying legal issues affecting their agencies. *Id.* This recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Id.* Thus, in making the substantial–evidence determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Id.* Our supreme court has stated that, between two fairly conflicting views, even if the reviewing court might have made a different choice, the agency's choice must not be displaced. *Id.*

The Arkansas Administrative Procedure Act also provides that either the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial

18

rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h) (Supp. 2019). Thus, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h); *Oudin*, *supra*.

IV. *Discussion*

A. Finding #1: That Kosmic Kidz Failed to Comply with
the Meal-Component Requirements of CACFP

Appellants contend that the agency's finding that Kosmic Kidz failed to comply with the meal-component requirements of CACFP was not supported by substantial evidence and was based on unlawful procedures. Appellants complain that they are essentially being punished for seeking technical assistance from DHS as to whether the Switch drinks were acceptable replacements for the fruit and vegetable components required under the regulations for CACFP. Because DHS had responded that Kosmic Kidz's use of the Switch drinks without another component was insufficient, appellants argue that DHS was aware that "November would be 'full of errors'"; yet, DHS still conducted a review of that month. Appellants further argue that before DHS required any sort of action or imposed any penalty, DHS should have first given Kosmic Kidz notice that it was not in compliance so that it would have an opportunity to correct its behavior. Therefore, appellants argue that DHS's

19

review was based on unlawful procedures and was done in violation of Kosmic Kidz's "right to notice." We disagree.

The ALJ specifically found the following in the final order pertinent to this point on appeal:

> On Finding #1 the agency is correct in their determination that [Kosmic Kidz] failed to comply with the meal component requirements of CACFP for the review period of November 1 through November 30, 2015, by serving Switch, a carbonated 8oz fruit juice, as the only fruit/vegetable component for supper. A pasteurized, full-strength vegetable or fruit juice may be counted to meet not more than one-half of the requirement for serving two vegetables or fruits, or a combination for supper. A serving of vegetables or fruits was lacking in 14,597 supper meals.
>
> Kosmic Kidz argued that they self-reported about the Switch and should not be penalized; however, federal regulations under 7 CFR § 226.20(a)(3)(i) states that pasteurized, full-strength fruit juice may be used to fulfill the entire requirement. Fruit juice or vegetable juice may only be served at one meal, including snack, per day. They also failed to comply with the existing CACFP agreement which requires [Kosmic Kidz] to comply with 7 CFR § 226.17a(l) Meal pattern requirements for afterschool snacks and at-risk afterschool meals in 7 CFR § 226.20(a)(2)(i) and (3)(i). Pasteurized, full-strength fruit juice may meet the entire requirement of fruit at one meal or snack but does not meet the vegetable requirement for a meal or snack. Clarification from the USDA would be needed to make the determination that Switch with another fruit/vegetable component would be an allowable reimbursement.
>
> Total Over-claim for insufficient fruit/vegetable component for supper meals is $48,170.10 not $48,279.58.

Substantial evidence, as recited in Finding #1, supports the ALJ's decision on this point. Kosmic Kidz was required to comply with CACFP regulations to be reimbursed for the snacks and meals it provided, but it failed to do so. *See* 7 C.F.R. §§ 226.20, 226.17a. Kosmic Kidz instead relied on representations and a flier provided by a vendor at a food show and did not seek technical guidance from DHS before using the Switch drinks. Although appellants argue that they were unfairly penalized for later self-reporting their

20

mistake and that DHS was somehow prohibited from seeking repayment for the disallowed meals without providing prior notice that Kosmic Kidz had not complied with the regulations, appellants fail to cite any persuasive legal authority to support their arguments. It is axiomatic that this court will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150. It is a well-settled principle of appellate law that we will not make a party's argument for him or her. *Foster v. Estate of Collins*, 2017 Ark. App. 65, 511 S.W.3d 900. As such, we affirm on this point.

### B. Finding #2: That Kosmic Kidz Failed to Properly Submit Claims for Some of the Day-Care-Center Sites

Appellants next contend that the agency's finding that Kosmic Kidz submitted claims for ineligible sites was not supported by substantial evidence. Appellants specifically argue that the ALJ's findings are not supported by substantial evidence because the "proof on this issue that was before the ALJ was so nearly undisputed that fair-minded persons could not reach a conclusion that Kosmic Kidz served meals to improper sites." Appellants further argue that Kosmic Kidz was not provided adequate information to address or correct any problems with meals at these sites. We disagree.

The ALJ specifically found the following in the final order pertinent to this point on appeal:

> On Finding #2 the agency is correct in their determination that [Kosmic Kidz] failed to properly submit claims at the following day care center sites for the month of November, 2015: The sites were not eligible to claim afterschool at-risk snack and supper meals for a particular child who is receiving meals under another component of the program on the same day.

21

7 CFR § 226.17a(h) Kosmic Kidz failed to comply with the existing CACFP agreement which requires them to advise the State Agency/DHS of substantive changes to any at-risk afterschool care center program and failure to provide the State Agency/DHS with sufficient information to demonstrate that the new centers meet the requirements of CACFP. Kosmic Kidz gave testimony that four of the sites were not CACFP sites.

Kosmic Kidz did not dispute they failed to comply with this regulation. An at-risk afterschool care center that provides care to a child under another component of the Program during the same day may not claim reimbursement for more than two meals and one snack, or one meal and two snacks, per child per day, including the at-risk afterschool snack and the at-risk afterschool meal. All meals and snacks must be claimed in accordance with the requirements for the applicable component of the Program as per 7 CFR § 226.17a(k).

| | | |
|---|---|---|
| Snack | (5,777) 6,579 X $ 0.84 = | $5,526.36 |
| Supper | (5,777) 6,579 X $ 3.07 = | $20,197.53 |
| Cash in Lieu | (5,777) 6,579 X $ 0.23 = | $1,513.17 |

The agencies total of snacks, suppers and cash in lieu were each 5,777 which was incorrect. The correct amount was 6,579 each.

Total Over-claim for ineligible day care centers as At-Risk sites of $27,237.06 is correct.

We hold that substantial evidence supports the ALJ's findings. "[A]n at-risk afterschool care center that provides care to a child under another component of the Program during the same day may not claim reimbursement for more than two meals and one snack, or one meal and two snacks, per child per day, including the at-risk afterschool snack and the at-risk afterschool meal." 7 C.F.R. § 226.17a(k). Additionally, if Kosmic Kidz wanted to add new at-risk afterschool care centers, it was required to provide DHS with information sufficient to demonstrate that the new centers met the requirements of CACFP. *Id.* Further, Kosmic Kidz was required to advise DHS of substantive changes to any at-risk afterschool care-center program. 7 C.F.R. § 226.17a(h).

22

Here, Hunter testified that this finding was based on some children receiving three meals from one CACFP provider before Kosmic Kidz provided additional meals and that only three meals total are allowed. Jackson testified that he thought he could provide two additional meals as long as there were two separate providers. However, 7 C.F.R. § 226.17a(k) makes it clear this is not the case. Even though Kosmic Kidz was another provider arriving at a site later in the day, it was still prohibited under 7 C.F.R. § 226.17a(k) from being reimbursed for any additional meals provided when the site had already provided three meals under another component of the CACFP program. Jackson also testified that some of the sites listed in Finding #2 were not on the CACFP program; therefore, any meals provided to those sites should not have been disallowed because any meals already provided by those sites would not have been reimbursed under another component of the CACFP program. However, before Kosmic Kidz could provide meals to a new site, it was required to provide DHS with information sufficient to demonstrate that the new centers met the requirements of CACFP and advise DHS of substantive changes to any at-risk afterschool care-center program. *Id.*; 7 C.F.R. § 226.17a(h). The ALJ found that Kosmic Kidz failed to comply with those regulations. As true for any other fact-finder, it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, 368 S.W.3d 69; *Ark. Dep't of Human Servs. v. Bixler*, 364 Ark. 292, 219 S.W.3d 125 (2005). Therefore, the ALJ was permitted to find Hunter's testimony on this point more credible. As such, we affirm under these facts.

C. Finding #3: That Kosmic Kidz Failed to Serve At-Risk Supper and Snack Meals at the End of the School Day at the Quest Charter School Site

Appellants contend that the agency's finding that Kosmic Kidz failed to timely serve meals at Quest Charter Schools was not supported by substantial evidence. The ALJ specifically found the following in the final order pertinent to this point on appeal:

> On Finding #3 the agency is correct that [Kosmic Kidz] at the Quest [Charter] School site failed to serve at-risk supper and snack meals at the end of the school day. The letter that was provided from Quest School admitted that they ended instructional time at 2:45 p.m. and dismissed the students at 3:10 p.m. to board the bus, which gave the students snack time prior to boarding the bus but now they are ending their instructional time at 3:10 p.m. and giving the snack at 3:40 p.m. The end of the school day was 3:10 p.m. Kosmic Kidz failed to comply with the existing CACFP agreement, which required them to serve at-risk afterschool snacks after the end of the child's school day as per 7 CFR § 226.17a(m).
>
> Ineligible meals claimed for the month of November 2015:
>
> | | | |
> |---|---|---|
> | Snack | 1,082 X $ .84 | = $ 908.88 |
> | Supper | 1,082 X $3.07 | = $3,321.74 |
> | Cash in Lieu | 1,082 X $0.23 | = $ 248.86 |
>
> Total Over-claim for ineligible charter school sites $4,479.48.

Appellants admit that 7 C.F.R. section 226.17a(m) requires that at-risk afterschool snacks and meals cannot be served until after the end of the child's school day. Appellants argue on appeal that Kosmic Kidz complied with this regulation. Appellants offered a letter from Quest campus director, Arnold Robertson. In the letter, Robertson stated that the school previously ended its instructional time at 2:45 p.m. and dismissed the students at 3:10 p.m. to allow the students snack time prior to boarding the school bus. Robertson stated that it had changed its policy to end the instructional day at 3:10 p.m. and gave students their snack at 3:40 during tutoring before ending the day at 4:00 p.m.

Hunter, however, testified that it was determined during the review that children were being provided snacks and meals before the end of children's school day. Hunter testified that DHS personnel witnessed children being released early from class to receive a snack and a meal. Also, Hunter said that school staff admitted that children were being released early. Finally, he testified that the determination of the end of a school's instructional day is determined by the Arkansas State Board of Education.

We hold that substantial evidence supports the ALJ's findings. Hunter's testimony about DHS personnel witnessing, and school staff admitting, that children were being released early for snacks and meals is sufficient to support this finding. Although Robertson's letter stated that the school now ends its instructional day at 3:10 and snacks are served at 3:40, he makes clear that the snacks and meals were served before the final dismissal at 4:00. He also did not say when the school changed its dismissal times or whether the change was related to DHS's findings. Although Jackson testified that there was a voluntary program after school, Robertson did not mention the voluntary program discussed by Jackson. Moreover, Hunter testified that a school cannot just change the start and end times of its instructional day without approval of the state board. As already indicated above, it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Reed*, 2010 Ark. 338, 368 S.W.3d 69; *Bixler*, 364 Ark. 292, 219 S.W.3d 125. Because the burden of proving an absence of substantial evidence is on appellants, we affirm.[7]

---

[7]Appellants note that DHS counsel did not discuss this point during oral argument before the circuit court. However, our review is directed not to the decision of the circuit court but to the decision of the administrative agency. *A.B.*, *supra*.

D. Finding #9: That Kosmic Kidz Failed
to Enter into a Lease Agreement with a Bona Fide Third Party

Appellants contend that the agency's finding that Kosmic Kidz did not have an arm's length transaction regarding the building lease was not supported by substantial evidence and was based on unlawful procedures and unconstitutional. The ALJ specifically found the following in the final order pertinent to this point on appeal:

On Finding #9 [Kosmic Kidz] did fail to enter into a lease agreement with a bona fide third party. [Kosmic Kidz] provided a copy of a lease agreement for the kitchen facility . . . The lease agreement is between [Kosmic Kidz] and Creative Focus in the amount of [$3,800] per month. Fredrick and Donna Jackson purchased the building on 4/1/2013. Mr. Jackson never presented any documentation that he sold or leased the building to Creative Focus and Jason Smith. The lease between Jason Smith, Creative Focus and [Kosmic Kidz] was signed on 10/1/2014. A second lease agreement was entered into with Fredrick Jackson and [Kosmic Kidz] on 10/1/2015. Mr. Jackson signed both as the landlord and tenant. Mr. Jackson's signature was altered from his normal signature on the second lease agreement to appear to be two separate signatures instead of both the landlord and tenant being signed by Mr. Jackson. Agency Exhibit K, Schedule A-8 Office Space Agreement lists the lessor as "Creative Focus" it further states that the agreement for office space is between unrelated parties. Therefore, I find that Kosmic Kidz failure to disclose the pertinent information was deliberate resulting in the disallowance of the cost as per FNS Instruction 796-2 Rev. 4.

4 months x $3,800 = $ 15,200.00 (October 2015, November 2015, December 2015 and January 2016).

2 C.F.R. section 200.465 provides the following in pertinent part:
(b) Rental costs under "sale and lease back" arrangements are allowable only up to the amount that would be allowed had the non–Federal entity continued to own the property. This amount would include expenses such as depreciation, maintenance, taxes, and insurance.

(c) Rental costs under "less-than-arm's-length" leases are allowable only up to the amount (as explained in paragraph (b) of this section). For this purpose, a less-than-arm's-length lease is one under which one party to the lease agreement is able to control or substantially influence the actions of the other. Such leases include, but are not limited to those between:

. . . .

26

(4) Family members include one party with any of the following relationships to another party:

(i)    Spouse, and parents thereof;

Appellants specifically argue that DHS was aware that this was a related–party transaction because Jackson had previously submitted a prior lease agreement when he submitted his application to be approved for the program. Appellants argue that because Jackson disclosed the lease agreement and that DHS tacitly approved it, the lease payments should not be disallowed. Appellants further explain that the appraisal value of the property was incorrect because Jackson spent approximately $300,000 in renovations. Appellants additionally argue that "[i]f the state agency determines that the institution's failure to disclose pertinent information was not deliberate, the state agency may permit the institution to claim and retain CACFP reimbursement up to the amount that would have been allowed on a full and accurate disclosure had been provided." These arguments, however, lack merit.

Here, the ALJ was presented with conflicting evidence regarding whether Kosmic Kidz properly disclosed information to DHS that the lease agreement was less than an arm's length transaction. Further, assuming Kosmic Kidz failed to disclose, there was also conflicting evidence on whether the nondisclosure was deliberate. Hunter testified that part of his review was inspecting Kosmic Kidz's leases for both its building and the vehicles used in its program. There were two building leases entered into evidence at the hearing before the ALJ. The first lease was for the period October 1, 2014, through September 30, 2015.[8]

---

[8]The lease appears to contain a scrivener's error regarding this date. However, the date is not particularly relevant to our analysis.

Creative Focus was listed as the landlord and Kosmic Kidz was listed as the tenant. The lease was signed by Jason Smith on behalf of the landlord and Jackson on behalf of the tenant. The second lease agreement was for the period October 1, 2015, through September 30, 2020. In this agreement, the landlord was no longer Creative Focus; rather, Fredrick Jackson was listed as the landlord, and Kosmic Kidz was listed as the tenant. Fredrick Jackson signed the lease on behalf of the landlord, and the signature of the person signing on behalf of Kosmic Kidz is illegible and is not named, although Fredrick Jackson is the director of Kosmic Kidz. The rent under both leases was $3,800 a month.

Hunter testified that reimbursement for the lease payments was disallowed because the leases were not arm's length transactions with bona fide third parties. Hunter stated that he did some further research and determined that the landlord in the first lease agreement, Creative Focus, was a business actually owned by Fredrick Jackson. And as previously stated, the landlord in the second lease agreement was also Fredrick Jackson. Additionally, according to Hunter, the Jefferson County property records showed that Jackson owned the property and that the appraisal value was $37,900. Hunter testified that he was not aware of anyone at Kosmic Kidz ever informing anyone at DHS that the facility lease was a related-party transaction. Moreover, Hunter said that he asked repeatedly during the review if this was a related-party transaction but that Jackson stated that he did not own anything and did not tell Hunter who did.

Jackson admitted during his testimony that he and his wife own the building personally. Despite Hunter's testimony to the contrary, Curry testified that Jackson never tried to hide his ownership and that it was common knowledge. He also stated that Kosmic

Kidz provided a copy of its lease to DHS every year and that it was uploaded with its application.

It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence, and Hunter's testimony supports the ALJ's findings that Kosmic Kidz failed to disclose that the lease agreement was less than an arm's length transaction and that its failure to disclose the pertinent information was deliberate. *See Reed*, 2010 Ark. 338, 368 S.W.3d 69; *Bixler*, 364 Ark. 292, 219 S.W.3d 125. Because the ALJ found that Kosmic Kidz's failure to disclose the pertinent information was deliberate, any costs were disallowed under FNS Instruction 796-2 Rev. 4. FNS Instruction 796-2 Rev. 4 specifically provides the following:

> The failure of the institution to identify related party transactions, less–than–arms-length transactions, ownership interests in equipment, supplies, vehicles and facilities or disclose any other information to the State agency that inhibits the State agency's ability to make an informed assessment of the allowability of a particular cost will result in the disallowance of the cost and may subject the institution, its principals, employees, consultants or others to the administrative and legal remedies available to the State agency and FNS. If the State agency determines that the institution's failure to disclose pertinent information was not deliberate, the State agency may permit the institution to claim and retain CACFP reimbursement up to the amount that would have been allowed had a full and accurate disclosure been provided to the State agency; however the State agency cannot permit the institution to claim unallowable costs, retain Program funds earned as a result of claiming unallowable costs, or use nonprofit food service account funds to pay for unallowable costs.

U.S. Dep't of Agriculture, FNS Instruction 796-2, Rev.4, at 15, http://dhs.arkansas.gov/ dccece/snp/PrintDocumentsArchive.aspx (under Financial Management & Budgets).

Appellants' final argument under this point is that DHS failed to conduct an "exit conference," which would have allowed DHS to provide Kosmic Kidz further "technical assistance." Additionally, appellants argue that they were not given notice of the specific

FNS instructions used by DHS and the ALJ. Therefore, appellants claim that the ALJ's decision was based on unlawful procedures and was unconstitutional. However, these conclusory arguments also lack merit because this court will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Mann*, 2016 Ark. 418, 505 S.W.3d 150. As such, we affirm.

E. Finding #10: Kosmic Kidz Leased Vans and Box Trucks
From Kosmic Kidz Learning Center in the Amount of $47,000 a Month

Appellants contend that the agency's finding that Kosmic Kidz did not have an arm's length transaction regarding the vans and box trucks was not supported by substantial evidence and was based on unlawful procedures and unconstitutional. The ALJ specifically found the following in the final order pertinent to this point on appeal:

> On Finding #10 the agency was correct in their determination that the Transportation Van Lease Agreement submitted by Kosmic Kidz is an unallowable cost because it's within "arm's length" between the Director of Kosmic Kidz Outreach, Director Fredrick Jackson and the Director/Owner of Kosmic Kidz Learning Center, Mrs. Donna Jackson, the spouse of Mr. Fredrick Jackson. Based on review of the lease agreement and the parties that are involved, this is not a bona fide third party lease agreement and is disallowed for the period of review.
>
> Kosmic Kidz argued that their failure to disclose the arm's length transaction was not deliberate, but they failed to provide a rental/lease agreement for each piece of equipment at the time of application. The one provided was for 11 vehicles instead of 12 van/truck/car rental and the lease was between Kosmic Kidz Learning Center and Kosmic Kidz Outreach Inc., Summer Program and this is a CACFP. Additionally, Kosmic Kidz provided copies of checks totaling $175,000 for van/truck rental to Kosmic Kidz Learning Center; however, the documentation on the checks did not specify the months of payments. Petitioner's Exhibit 6 "Expenses by Vendor Summary" list for September 2015 Van Rental 32,700.00 and for October 2015 list Van Rental 33,790.00, which does not add up for what to the check dated $70,000.00 written on 10/21/2015 which notes for 2 months of truck/van rental. Therefore, I find that Kosmic Kidz failure to disclose the pertinent information was deliberate resulting in the disallowance of the cost as per FNS Instruction 796–2 Rev. 4. I find that the actual amount to be disallowed is for $175,000.00 in checks submitted in Petitioner's Exhibit 3.

It is undisputed that the eleven vehicles used by Kosmic Kidz were rented from a company owned by Jackson's spouse for $47,000 a month. The testimony presented regarding the vehicles was similar to the testimony regarding the building leases. Hunter testified that Kosmic Kidz did not disclose that any of the transactions were between related parties. Hunter further testified that he repeatedly questioned Jackson during the review regarding who owned the leased building and vehicles used by Kosmic Kidz, but Jackson stated that he did not own the building or the vehicles. Curtis, a witness for Kosmic Kidz, however, testified that the fact that this was a related-party transaction was disclosed to a member of the DHS audit team in 2013 and in the 2013 audit.

Appellants' arguments under this point on appeal are similar to their arguments regarding the building lease. Appellants argue that the lease agreements for the vans and box trucks should not be disallowed because it was disclosed to DHS that these were related-party transactions and because DHS failed to follow procedure or give Kosmic Kidz proper notice. However, for the same reasons stated above regarding the building lease, we affirm.

F. Finding #13: Kosmic Kidz Issued Checks Payable to Jackson that Were
Not Payroll Checks; the Statement Written in the Memo Lines Was "Nonfood Refund"

Appellants contend that the agency's finding that Kosmic Kidz failed to provide receipts for the checks was not supported by substantial evidence. The ALJ specifically found the following in the final order pertinent to this point on appeal:

On Finding #13 the agency was correct in their determination that Kosmic Kidz, Inc. issued checks payable to Mr. Fredrick Jackson that were not payroll checks in the amount of $27,774.40. The two checks were not supported by invoices or receipts as required by Federal regulations and are disallowed. Kosmic Kidz did submit "Expenses by Vendor Summary", Petitioner's Exhibit 6; however, Mr.

31

Jackson did not provide invoices or receipts for any out of pocket expenses that were paid by him as required by 7 CFR 226.6(b)(2)(vii)(C)*(2)*.

Hunter testified that Kosmic Kidz issued two checks in November 2015 payable to Jackson that were not payroll checks. The checks indicated in the memo line that they were nonfood refund checks from previous months, September and October 2015. Hunter explained that costs for nonfood items such as plates, Styrofoam containers, utensils, or other items purchased to facilitate the operation of the meal service were allowed if supported by invoices or receipts. However, Hunter testified that because Kosmic Kidz did not provide invoices, receipts, or other documentation for any out-of-pocket expenses that were paid by Jackson to justify the issuance of those checks, those two checks were disallowed under the regulations. Hunter testified that he asked Jackson during the review for the supporting documentation, but none was forthcoming. Hunter stated that Kosmic Kidz did provide some receipts for nonfood reimbursements during the review; however, those receipts were dated in November 2015, not the period for which the checks were written.

Jackson testified that he was never asked to provide documentation from September or October to substantiate the issuance of those checks. However, Jackson claimed that Hunter stamped the receipts but did not review them or take them with him. Jackson stated he had the receipts but admitted he did not bring those receipts with him to the hearing. On appeal, appellants direct us to the vendor-expense summaries created by Kosmic Kidz for September and October 2015 that are contained in our record. However, those summaries do not show if the payments were for allowable costs. Thus, under these facts, we hold that substantial evidence supports the ALJ's findings and affirm.

## V. *Conclusion*

In conclusion, we hold there is substantial evidence to support the ALJ's decision that DHS correctly demanded Kosmic Kidz to repay $270,623.98 and that the agency's decision does not violate any of the other criteria set out in Arkansas Code Annotated section 25-15-212(h).

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellants.

*Skye Martin*, Office of Chief Counsel, Arkansas Department of Human Services, for appellees.